*Grymes*, for the appellants.

---

## SAMUEL A. LARD *v.* REUBEN M. STROTHER and Wife,

In a question as to the sufficiency of the surety on an attachment bond, his actual means, and not the amount for which, from the nature of the case, he may be ultimately liable, must be looked to. C. C. 3011, 3012, 3033.

The fact of being a creditor of a party to a suit, does not disqualify a witness from testifying on his behalf.

Secondary evidence will only be admitted, where the absence of better has been sufficiently accounted for.

Defendants having obtained an order of seizure and sale on a judgment rendered in another State, plaintiff became the purchaser of his own property at a twelve months' credit, for the price of which he gave a bond in conformity to law. Previous to its becoming due, he obtained an injunction to prevent defendants from issuing any execution on it, and procured the appointment of a curator *ad hoc* to represent the defendants, who resided in another State. A commission to take testimony having been taken out by plaintiff, he caused the interrogatories to be served on the curator *ad hoc.* On an objection to the admission of the depositions : *Held,* that defendants having an attorney of record in the proceedings to obtain the order of seizure and sale, the case was not one for the appointment of a curator *ad hoc ;* and that the interrogatories, not having been served on the defendants, or their counsel, were inadmissible.

APPEAL from the District Court of Pointe Coupée, *Nicholls, J.*

Lard v. Strother and Wife.

GARLAND, J.   In the spring of 1840, Ann Strother, represent-
ing herself as the widow and executrix of the late Halsey Town-
send, of Mississippi, authorized and assisted by her husband, R.
M. Strother, presented a petition to the Judge of the District
Court of Pointe Coupée, in which she represented, that in the
year 1835, she had recovered two judgments against the plaintiff
Lard, one in her own right, and the other as executrix of her late
husband.   The first for $2005 25, with eight per cent interest from
March 20th, 1835, until paid, and costs ; and the second, for $1102,
with like interest from the same date, and costs.   On the 26th
of April, 1838, a credit was entered, which reduced the amount
due on the two judgments, not including costs, to the sum of
$2444, which she claims, with eight per cent interest from the
last date.   With this petition two judgments were presented, ren-
dered in the State of Mississippi, which were prayed to be made
executory, and an order of seizure and sale was issued in confor-
mity to law.   Under this writ, a tract of land, and several slaves,
were seized and offered for sale for cash, by the sheriff, but as
two-thirds of the appraisement were not bid, the property, by con-
sent of the parties, was immmediately offered on twelve months
credit, and purchased by Lard, who gave his bond to Strother
alone, with security for the full amount claimed of him, with in-
terest and costs.

A few days before the bond given by Lard became due, he
commenced this suit, for the purpose of attaching the debt owing
by himself, and arresting, by injunction, the execution about to
be issued on the bond.   He represents, that Strother, and his
wife, in her own right as legatee, and as executrix of Halsey
Townsend, deceased, are indebted to him $12,000, with eight per
cent interest, from November, 1838, until paid.   He states, that
previous to the death of Townsend, they were in partnership,
(for a purpose not explained) ; that their accounts were in the
course of settlement when the latter died ; that after his decease,
he (plaintiff) and Townsend's widow appointed arbitrators to
make a final settlement of all demands and accounts, including
the notes on which the judgments were obtained.   He avers, that
the arbitrators met and made an award ; that Townsend's wife
said at the time that she had lost or mislaid the notes afterwards

Lard v. Strother and Wife.

sued on, but promised to deliver them ; that by this award, he (Lard) became indebted to Ann Townsend, (the widow,) $1850 to secure the payment of which he executed in her favor, in May, 1834, a mortgage on his interest in the Natchez or Lard's Rail Road, in the city of Natchez; but that she, in violation of her promise, brought suit on the notes, and obtained judgments, though he had furnished his counsel with the means of defence, which means his counsel, in consequence of fraud and collusion with Ann Townsend, failed to use ; wherefore he alleges, that the judgments are null and void. He states, that all his documents and papers are withheld by his counsel, who pretends that they are lost or mislaid. He further alleges, that subsequent to the award and judgments, Ann Townsend married Strother in the State of Mississippi, whereby the latter has become entitled to all her personal rights, property, and actions, in virtue of which, he states, that Strother has, upon the authority of these judgments and the mortgage aforesaid, obtained from Stephen Duncan, the president and agent of said Rail Road Company, the proceeds, for which one-half of the property of the company was sold, Strother in virtue of the aforesaid mortgage and judgments representing him (Lard) ; by means whereof Strother received $18,000, one-third of which belonged to him (Lard.) He alleges, that these $6000 were received in the year 1838, and that in virtue of the aforesaid mortgage and judgments, Strother and wife have since sold the other half of his (Lard's) interest, which is worth $6000 more, which they have received. It is further alleged, that the fact of the receipt of these $12,000 has come to the knowledge of the petitioner since he signed the twelve months bond. He avers, that the two judgments were in fact more than extinguished by compensation before the order of seizure and sale was issued. He alleges, that a large balance is due to him on account of the proceeds of the rail road, which he claims against Strother and wife, against whom he prays for an attachment to seize the debt in his own hands, and for an injunction to prevent any execution from being issued on the bond. He further prays for a judgment in his favor, against the defendants, for the balance due, after the extinguishment of the bond.

Upon the affidavit of the plaintiff, and on his giving bond and

security in the sum of $9000, an attachment and injunction were issued ; and a curator *ad hoc* was appointed to represent the absent defendants, upon whom the petition and attachment were served, although the defendants had an attorney of record in the case of the application for the order of seizure and sale. It may be proper to observe, that this curator *ad hoc* seems never to have acted in the case, or to have taken any step to assist the defendants.

At the first term of the court, the defendants appeared by their counsel, and moved to dissolve the attachment, because the person who had signed the bond as security was totally insufficient ; and also to dissolve the injunction, for the same cause, and for the further reason that the affidavit was insufficient and informal. The bond required to be given was for $9000. The sheriff was examined as a witness, who said that he considered the surety good when he signed the bond, but he does not certify to his solvency at the time of the trial. Other witnesses were examined as to his property, and the defendants showed from the record of mortgages various special mortgages and judgments recorded against him, amounting to a large sum ; and further, that since the bond was signed, the surety had sold to a free colored woman, as the deed states, for cash, a tract of land, which constituted a large part of his property.

The judge decided the surety to be sufficient, as under the peculiar circumstances the liability of the surety was not likely to be great ; and he, therefore, refused to dissolve the attachment. He also refused to dissolve the injunction, considering it a case coming within the meaning of articles 739 and 740 of the Code of Practice. He also held the affidavit to be sufficient.

The defendants then filed their answer, containing a general denial, a plea of *res judicata,* and an allegation that all the rights which Lard ever had in the rail road, had been seized and sold in the year 1835, under an attachment taken out by one Noah Barlow.

After a long contest in the inferior court, the plaintiff had a judgment, perpetuating the injunction against the twelve months bond, on the ground that it was extinguished by the funds which Strother had received from the rail road, or its proceeds, and,

Lard v. Strother and Wife.

also, recovering from Strother and wife, *in solido*, the sum of $9438 72; from which they have appealed.

In this court, the appellants urge, that the judge erred in refusing to dissolve the attachment and injunction on account of the insufficiency of the affidavit and of the surety on the bond.    As relates to the affidavit, we think the judge did not err.    It states, in a manner sufficiently clear, the allegations relied on, and complies with the provisions of the Code of Practice in relation to affidavits.*    But we differ widely with the judge as to the sufficiency of the surety on the bond, and think the principle he . adopted, of looking to what might be the ultimate liability of the surety, instead of his present means, as one that may lead to dangerous results.    Articles 3011 and 3033 of the Civil Code provide, that whenever a person is bound by law, or by a judgment, to give a surety he must present one, who in addition to other qualifications, has property sufficient to answer for the amount of the obligation ; and article 3012 declares, that whenever a surety received by a creditor, either voluntarily or by the direction of the law, becomes insolvent, his place must be supplied by another.    In this case Lard was bound to give security for $9000 ; he offered a man whose debts are shown to amount to about $14,000, and his property to $12,000.    The sheriff says that he considered him good at the time he signed the bond ; but he looked to his property, without knowing any thing of his liabilities. We do not, under the evidence, consider James Clemmons as sufficient surety on a bond for $9000 ; and we think that the

---

* The affidavit was in these words :

Samuel A. Lard, the plaintiff in the above case, makes affidavit that Reuben Strother, and his wife, Ann Strother, are justly indebted to your affiant in the sum of $6000 ; that said Reuben Strother, and his wife Ann reside out of the State of Louisiana ; that they have become indebted to this affiant in the aforesaid sum of money since the rendition of two judgments against this affiant in the Circuit Court of Adams county, in the State of Mississippi, in March, 1835, &c. ; . that the fact of Strother and wife's having received the affiant's interest in the Natchez Rail Road, amounting to the sum of $6000, has come to his knowledge since he purchased his own property, and gave the twelve months bond, on the 4th June, 1840, sold under the order of seizure and sale issued on the two judgments rendered in the Circuit Court of Adams county, Mississippi, &c.

judge ought to have compelled the plaintiff to give other security, or have dismissed the attachment, and dissolved the injunction.

On the trial, various bills of exception were taken, which are insisted upon here.

The first is to the admission by the court of Noah Barlow to testify as a witness, on the ground that he was interested.    He stated that he was a creditor of the plaintiff; and it further appeared that all his (plaintiff's) property was affected by the debt claimed by the appellants; wherefore their counsel insists, that Barlow had an interest in defeating their claim, as its defeat would give him a chance of being paid.    This may be true, but it has been long settled, that the fact of being a creditor of a party to a suit, does not disqualify a witness from testifying in it.

The next objection was, that Barlow was a stockholder in the Rail Road Company, and was, therefore, incompetent.    We see no force in this objection.    The company was not incorporated, and though it had been, we could see no reason or authority for excluding one partner in a company, from testifying, in a controversy between two of his associates, in relation to matters in which he has no interest.

The defendants next objected, that the parol evidence of Barlow was not the best which the nature of the case admitted; that he could not testify to the contents of papers which were in writing; and that a title to real estate could not be proved by his parol statements.    But the judge overruled all the objections, and permitted him to testify generally.    We think that in some of the objections of the defendants there is much force.    As to the sale of the property made by the company to the Corporation of Natchez, it was shown to have been made at auction, and a conveyance executed in writing.    The mortgage or sale made by the appellants to Roach, and that from Barlow himself to the defendants, were also in writing.    No reason is given why the originals, or copies of these instruments, could not be produced. No effort seems to have been made to procure them, and they would certainly be better data to decide on, than the recollection of the witness alone.    We are not to be understood as deciding that the parol evidence cannot be admitted at all; but that some cause should be shown why the better evidence could not be produced.

The defendants also objected to the reading, on behalf of the plaintiff, of certain depositions taken before Robitaille, at Natchez, on a number of grounds. The judge overruled these objections, and admitted the depositions in evidence, to which the appellants excepted. The first objection is, that the interrogatories were not served on the defendants, or their counsel, previous to sending them to obtain the answers of the witnesses. The plaintiff shows, that previous to the cause being at issue, he had filed the interrogatories, and had them served on the curator *ad hoc* whom he had procured to be appointed; and this, his counsel contends, is sufficient, and so thought the judge; but we cannot concur in the opinion. This is not one of the cases in which a curator *ad hoc* should have been appointed, and the one named never acted. The remedy adopted in this case to bring the parties into court, is by attachment, and our laws point out a plain course to be pursued in such cases. If the appellants had no counsel within the jurisdiction of the court, one should have been appointed for them, and the proceedings have been conducted contradictorily with him; but in the case before us, the appellants had counsel in the parish, who was not notified of these interrogatories. The interrogatories should have been presented to the defendants, or to their counsel, and this not having been done, the depositions must be rejected.

Without the testimony of Duncan, Ferriday, Taylor, Vannencon, and others, there is not sufficient evidence to sustain the judgment of the lower court; but under the circumstances, we do not think it would be just to non-suit the plaintiff, who seems to have equity on his side.

The judgment of the District Court is, therefore, annulled and reversed, and the cause remanded for a new trial, with directions to the judge below on the trial thereof, to conform to the principles herein expressed, in relation to the security on the attachment and injunction bond, and the admission or rejection of the evidence, and otherwise to conform to law; the plaintiff paying the costs of the appeal.

*Paterson*, for the plaintiff.

*Ilsley* and *Stevens*, for the appellants.